## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**ALYSON CLARK,**

        **Plaintiff,**

            **v.**

**BRENT WHALEY, et al.,**

        **Defendants.**

**Case No. 1:20-cv-300**
**JUDGE DOUGLAS R. COLE**

### OPINION AND ORDER

This cause is before the Court on Defendants Kelly Richardson ("Richardson") and Celadon Trucking Services, Inc.'s ("Celadon," and together with Richardson the "Celadon Defendants") Motion for Summary Judgment (Doc. 34). Because the Court finds as a matter of law that Richardson did not drive negligently, the Court **GRANTS** the Celadon Defendants' Motion (Doc. 34) and **DISMISSES** Clark's estate's claims against the Celadon Defendants **WITH PREJUDICE**.

### BACKGROUND

This case arose out of an accident that occurred when a truck struck a pedestrian who was walking in black clothes, with no light, shortly after one o'clock in the morning, in the middle of a traffic lane, *on an interstate highway*. The driver was Kelly Richardson, who works for Celadon Trucking Services. The pedestrian, Logan Clark, died as a result of the accident.

The chain of events that led to Clark's unfortunate demise began the prior evening, when Clark consumed at least four alcoholic drinks at Eli's Sports Bar over

a period of several hours before getting into his car to drive home via northbound I-71. (*See* Compl., Doc. 1, #5; *see also* Whaley Dep., Doc. 37, #1193–94, 1199). Around midnight that night, Brent Whaley, a deputy sheriff for the Warren County Sheriff's Office (and a defendant in this case), was driving behind Clark. (Whaley Dep., Doc. 37, #1178, 1193–94). Between mile markers 31 and 32 on I-71 north, near Lebanon, Ohio, Whaley saw Clark drive onto the grass median between the northbound and southbound highway lanes and get stuck. (*See id.* at #1198, 1243). Clark had apparently missed his exit and was trying, unsuccessfully, to cross the median so he could travel south and then exit to take State Route 48 home. (*See id.* at #1199). Whaley stopped his car on the shoulder near Clark's, got out, and approached Clark's vehicle. (*Id.*). Whaley issued Clark a citation for driving on the median. (*Id.* at #1223; Narrative Supplement to Police Report, Whaley Dep. Ex. 1, Doc. 38-1, #1339). But Whaley did not detain or arrest Clark, nor did Whaley transport Clark to the station or escort Clark home. (*See* Whaley Dep., Doc. 37, #1253). Instead, Clark told Whaley that Clark had a tow truck coming for Clark's vehicle. (*Id.* at #1203). Thus, after Whaley left, Clark and his car remained on the grass median. (*See id.* at #1243). At that point on I-71 north there are two traffic lanes (and a shoulder on each side). (*See id.* at #1193). The area is not illuminated by any road lighting. (*See* Richardson[1] Decl., Doc. 30-1, #648). The speed limit is seventy miles per hour. (Bens Dep., Doc. 28, #160).

---

[1] As further described below, both Kelly Richardson and her husband, Carl Richardson, were in the vehicle that struck Whaley. They filed a joint declaration, which the Opinion refers to as the Richardson Declaration.

The entire interaction between Whaley and Clark lasted about twenty-two minutes. (Whaley Dep., Doc. 37, #1261). About an hour after Whaley left, around 1:22 a.m., Richardson, a truck driver for Celadon, was driving a Celadon tractor-trailer north on I-71 near mile marker 31. (*See* Richardson Decl., Doc. 30-1, #645–46). Her husband, Carl Richardson, also a truck driver for Celadon, was sleeping in the cabin of the truck. (*Id.* at #645–47). Richardson was driving in the right lane behind another truck. (*Id.* at #647). She decided to pass the truck. (*Id.*). In order to do so, Richardson changed lanes from the right lane into the left lane. (*Id.*). Her speed was about 65 miles per hour. (*Id.*). Richardson intended to move back into the right lane after passing the other truck. (*Id.*). Throughout these events, Richardson was speaking to a friend by phone using a voice-activated hands-free headset. (*See* Richardson Dep., Doc. 35, #840).

At some point, Richardson saw Clark in front of her, standing in the middle of the left traffic lane, in which Richardson was then driving. (Richardson Decl., Doc. 30-1, #647). Clark was wearing black clothing. (*Id.* at #648; *see also* Whaley Dep., Doc. 37, #1202). Richardson "immediately" tried to slam on the brakes and moved to the left in an attempt to avoid him (the other truck was still to her right). (Richardson Decl., Doc. 30-1, #647). Unfortunately, Richardson struck Clark with the right front of her vehicle. (*Id.*). Richardson's truck eventually came to a full stop on the left shoulder about 150–300 feet further on. (*Id.*). Richardson's husband, Carl, got out to see what had happened. (*Id.*). Clark's body was now in the middle of the trailer underneath the air vent. (*Id.*). Clark had no pulse and was not breathing. (*Id.*).

3

Emergency medical technicians arrived on the scene and pronounced Clark dead. (*Id.* at #648).

Later that night, Warren County Sheriff's Deputy Rick Bens (not a defendant in this action) completed a Fatality Accident Report that found the conditions at the scene consistent with Richardson's narrative of events. (*See* Bens Dep., Doc. 28, #125, 165). In particular, Bens used the stopping distance of Richardson's truck, along with information available from its electronic control module, to calculate the speed at which Richardson had been traveling. (*See generally* Bens Dep., Doc. 28, #298–315). Those calculations yielded an estimated range of 65–70 miles per hour. (*See id.* at #307). There is no evidence in the record that Richardson was travelling faster than the posted speed limit, nor was she cited for speeding.

On April 15, 2020, Plaintiff Alyson Clark initiated this action on behalf of Clark's estate by filing her Complaint (Doc. 1) in this Court. Clark's estate pursues constitutional claims under 42 U.S.C. § 1983 against Deputy Whaley and his supervisor, Ryan Saylor, for deliberate indifference to Clark's safety based on Whaley leaving Clark stranded on the interstate after citing him. (*See* Compl., Doc. 1, #14, 16). More relevant here, Clark's estate also alleges that Richardson, and therefore Celadon, caused Clark's death by driving negligently. (*See id.* at #21–22).

On March 25, 2021, the Celadon Defendants moved for summary judgment (Doc. 34). They argue that, as a matter of law on the undisputed facts here, Richardson did not drive negligently. Clark's estate filed its opposition (Doc. 39) on April 15, 2021, and the Celadon Defendants replied (Doc. 44) in support of their

Motion (Doc. 34) on April 30, 2021. The matter is now fully briefed and before the Court.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to conclusively show that no genuine issue of material fact exists. *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Lansing Dairy*, 39 F.3d at 1347.

This Court is not obliged to search the record sua sponte for genuine issues of material fact. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404–06 (6th Cir. 1992). Instead, the nonmoving party must "designate specific facts or evidence in dispute." *Jordan v. Kohl's Dep't Stores, Inc.*, 490 F. App'x 738, 741 (6th Cir. 2012) (quotation omitted). If the nonmoving party fails to make the necessary showing for an element upon which it bears the burden of proof, then the moving party is entitled to summary judgment. *Celotex Corp.*, 477 U.S. at 323.

Granting summary judgment depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distribs. Benefits Ass'n v.*

*Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). In sum, the nonmoving party, at this stage, must present some "sufficient disagreement" that would necessitate submission to a jury. *See Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251–52). In making that determination, though, the Court must view the evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) ("In arriving at a resolution, the court must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party.").

## LAW AND ANALYSIS

The Celadon Defendants argue that there is no genuine dispute as to whether Richardson drove negligently when she struck Clark. (*See* Mot. for Summ. J. ("Mot."), Doc. 34, #689–91). The Court agrees. Under Ohio law, a driver traveling lawfully in her lane normally has no duty to look out for pedestrians in front of her, but a driver does have a duty to take reasonable steps to avoid colliding with a pedestrian in her right-of-way once the driver discovers a dangerous situation. *See Snider v. Nieberding*, No. CA2002-12-105, 2003 WL 22427808, at *2 (Ohio Ct. App. Oct. 27, 2003) (citing *Deming v. Osinki*, 265 N.E.2d 554, 555 (Ohio 1970)); *Lumaye v. Johnson*, 608 N.E.2d 1108, 1110 (Ohio Ct. App. 1992).

Under these principles, Richardson was not negligent. There is no evidence that Richardson had any reason to expect to encounter a pedestrian in the left lane

of northbound I-71 in the middle of the night. *Cf. Dixon v. Nowakowski*, No. L-98-1372, 1999 WL 652001, at *4 (Ohio Ct. App. Aug. 27, 1999) ("There is no evidence in the record before us that appellant appeared in appellee's lane of travel at a sufficient distance ahead of her to give her time … to bring her automobile to a stop and avoid the collision."), There is no evidence that Richardson was speeding or moving irregularly. *See Copas v. McCarty*, CASE No. CA85-03-005, 1985 WL 7711, at *1 (Ohio Ct. App. Aug. 26, 1985) (noting driver was not speeding). And as soon as Richardson did see Clark, who was wearing black clothing while walking in the middle of the left lane of an unlit portion of the highway, Richardson's uncontradicted testimony is that she "immediately" slammed on the brakes and swerved in an unfortunately unsuccessful attempt to avoid hitting him. (Richardson Decl., Doc. 30-1, #647). On those facts, Richardson was not negligent.

Perhaps recognizing the problems these facts create, Clark's estate tries, but fails, to create a genuine dispute regarding them. Specifically, Clark's estate points to a two-page affidavit from its own accident reconstructionist, Neil Gilreath, which identifies what Clark's estate characterizes as flaws in Bens' accident reconstruction report. (*See* Resp. in Opp'n to Mot. ("Opp'n"), Doc. 39, #1371 (citing Gilreath Aff., Opp'n Ex. 1, Doc. 39-1, #1378)). For example, Gilreath says that Bens did not conduct his speed testing using the same tractor-trailer as was involved in the accident. (*See id.*). In turn, the Celadon Defendants attempt to discredit Gilreath's report contesting Bens' conclusions. (*See* Reply in Supp. of Mot. ("Reply"), Doc. 44, #1403).

But this battle of experts is largely beside the point. On summary judgment, Clark's estate must do more than impeach Bens' report. Indeed, even if Richardson's testimony were the only evidence on which the Celadon Defendants relied to argue that Richardson did not drive negligently, Clark's estate would still have the burden to point the Court to other evidence sufficient to create a genuine dispute. *See Moore*, 8 F.3d at 340. Gilreath's report is no help there. Gilreath does not conclude, affirmatively and on the basis of competent record evidence, that some aspect of the accident contradicted Richardson's account in a material respect. For example, Gilreath did not conduct his own testing or calculations to determine that Richardson was in fact driving faster than the 65–70 miles per hour to which she testified, and which Bens' report corroborated. In the absence of any such affirmative evidence of negligence, mere rebuttal of some aspects of Bens' report, even if meritorious, would not create a genuine dispute as to whether Richardson drove negligently.

The closest Gilreath comes to contradicting a material aspect of Richardson's story is the following bare conclusion, unsupported by further evidence or explanation: "The DDEC Reports derived from the tractor's Electronic Control Module (ECM) do not reflect a 'hard brake' at the time in which Defendant Richardson claims to have spotted Mr. Clark and attempted to stop the tractor trailer." (Gilreath Aff., Opp'n Ex. 1, Doc. 39-1, #1378). The Court agrees with the Celadon Defendants that this single sentence is insufficient to create a genuine dispute as to whether Richardson drove negligently. (*See* Reply, Doc. 44, #1403). Gilreath provides no citation to the reports he reviewed, declines to explain how he

defines a "hard brake," and entirely omits his methodology for determining when Richardson would have seen Clark. *See* Fed. R. Evid 702 (expert testimony must be "based on sufficient facts or data" and "the product of reliable principles and methods"). Gilreath also does not address whether a "hard brake" would have been part of the standard of care for a truck driver encountering an unexpected pedestrian on the highway under the circumstances of the accident. Accordingly, Gilreath's Affidavit fails to create a genuine dispute as to whether Richardson drove negligently.

Clark's estate also tries another tack, advancing a negligence per se theory based on Richardson's alleged violation of O.R.C. 4511.21(A), which prohibits operating a vehicle "at a greater speed than will permit the person to bring it to a stop within the assured clear distance ahead."[2] According to Clark's estate, Richardson "clearly" violated this statute because she was not able to stop her truck in time to avoid hitting Clark. (Opp'n, Doc. 39, #1372). But that argument proves too much. According to Clark's estate's reasoning, any driver who hits a person or object in her path of travel has violated O.R.C. 4511.21(A). That is not the law. Instead, as Clark's estate itself recites, a driver violates the assured clear distance provision when "the driver collided with an object which (1) was ahead of him in his path of travel, (2) was stationary or moving in the same direction as the driver, (3) did not

---

[2] In its Complaint, Clark's estate also mentions several other statutes that Richardson allegedly violated. (*See* Compl., Doc. 1, #21). In its briefing on the instant Motion, though, Clark's estate does not pursue, and has therefore abandoned, any argument that Richardson was negligent per se based on statutes other than O.R.C. 4511.21(A). *See Road Sprinkler Fitters Loc. Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (argument not raised in opposition to motion for summary judgment abandoned).

suddenly appear in the driver's path, and (4) was reasonably discernible." *Pond v. Leslein*, 647 N.E.2d 477, 478 (Ohio 1995) (citation omitted). Here, there is no genuine dispute that Clark, a pedestrian standing in the left lane of an unlit portion of highway wearing dark clothing in the middle of the night, was not "reasonably discernible."[3] Accordingly, Richardson did not violate O.R.C. 4511.21(A), and Clark's estate's negligence per se theory fails.

Undeterred, Clark's estate argues that Richardson violated Celadon's written policies by being on the phone with her friend at the time she struck Clark. (*See* Opp'n, Doc. 39, #1369). There are a few problems with that argument. First, as the Celadon Defendants point out, the applicable portion of Celadon's communication devices policy by its terms prohibits use of only "hand held" devices, which Richardson's headset was not. (*See* Celadon Commc'n Device Policy, Richardson Dep. Ex. 4, Doc. 36-4, #1137; *see also* Richardson Dep., Doc. 35, #840, 842). Second, Clark's estate cites no Ohio case, and the Court is aware of none, that upholds a theory of negligence per se based only on violation of an employer's policy, rather than of a statute or regulation. *See, e.g., Lang v. Holly Hill Motel, Inc.*, 909 N.E.2d 120, 123 (Ohio 2009) ("violation of a *statutory duty* constitutes negligence per se") (emphasis added). To the extent that Celadon's communication devices policy refers to federal regulations applicable to commercial drivers, those regulations also apply specifically to hand-held devices. *See* 49 C.F.R. § 392.82 ("No driver shall use a *hand-held mobile telephone* while driving a [commercial motor vehicle]."). Third, nothing more than

---

[3] As the Celadon Defendants point out, assured clear distance violations tend to involve large, noticeable objects such as other vehicles. (*See* Reply, Doc. 44, #1404 (citing cases)).

sheer speculation supports Clark's estate's theory that Richardson would not have struck and killed Clark had she not been talking on the phone. *See Celotex Corp.*, 477 U.S. at 324 (requiring significant probative evidence to survive summary judgment). And, even under negligence per se, a plaintiff still must prove causation. *See, e.g., Boushack v. Grisez Invs., L.P.*, 58 N.E.3d 528, 531 (Ohio Ct. App. 2016) ("However, we emphasize that negligence *per se* does not mean the same thing as *liability per se*; a plaintiff still must prove the other elements of a negligence claim, *i.e.*, proximate causation and damages.") (citation omitted).

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Celadon Defendants' Motion (Doc. 34) and **DISMISSES WITH PREJUDICE** Clark's estate's claims against the Celadon Defendants, and accordingly also **DISMISSES WITH PREJUDICE** the Celadon Defendants' cross-claims as **MOOT.** The Court **DIRECTS** the Clerk to **TERMINATE** the Celadon Defendants from this action. Clark's claims against all other Defendants remain pending.

**SO ORDERED.**

March 10, 2022
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

11